UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>BARRY WISNER CHAPIN<br><br>               Debtor. | Chapter 7<br>Case No. 20-10324 JEB |
| OCEAN CITY LOFTS CONDOMINIUM ASSOCIATION, INC.,<br><br>               Plaintiff,<br>v.<br><br>BARRY CHAPIN AND THE UNITED STATES OF AMERICA<br><br>               Defendants. | Adversary Proceeding No. 20-01063 |

**STATEMENT OF CHAPTER 7 TRUSTEE IN RESPONSE TO
UNITED STATES OF AMERICA'S MOTION TO VACATE CLERK'S ENTRY OF
DEFAULT AND JUDGMENT**

Harold B. Murphy, Chapter 7 Trustee of the bankruptcy estate (the "**Estate**") of the above-captioned debtor (the "**Debtor**") hereby submits this statement in response to certain issues raised in United States of America's Motion to Vacate Clerk's Entry of Default and Judgment, and Withdrawal of Its Motion for Disbursement of Surplus Funds [Doc. 4] ("**USA's Motion to Vacate**").

BACKGROUND

1.  On or about March 15, 2019, Ocean City Lofts Condominium Association, Inc. ("**Ocean City**") filed a Complaint in the Circuit Court of the Fifteenth Judicial Circuit in and for

Palm Beach County, Florida captioned *Ocean City Lofts Condominium Association, Inc. v. Barry Chapin and the United States of America*, C.A. No. 2019-003451 (the "**Action**").[1]

2. In the Action, Ocean City sought, among other things, a determination of the validity of its lien for condominium association fees, the priority of its lien vis-à-vis tax liens of the United States, and a judgment of foreclosure permitting it to foreclose upon the real property owned by the Debtor, located at Unit 210E of Ocean City Lofts Condominium, 185 NE 4th Ave., Delray Beach, Florida (the "**Property**").

3. Ocean City named the United States as a party in the Action. Ocean City served process upon the local United States Attorney's office on March 21, 2019, but did not serve the United States Attorney General. [Doc. 1, p. 27].

4. On May 28, 2019, the Florida state court entered an entry of default against the United States [Doc. 1, p. 31].

5. On November 1, 2019, the state court entered a Final Summary Judgment of Foreclosure including Judgment for Attorneys Fees and Costs [Doc. 1, p. 63] ("**Summary Judgment of Foreclosure**"), which, among other things, determined that Ocean City's claim was superior to any claim of the United States (¶ 3), and ordered the public sale of the Property in accordance with 45.031, Fla. Stat., if Ocean City's schedule of outstanding fees and costs were not paid (¶ 4).

6. On January 14, 2020, the Property was offered for public sale, and a Certificate of Sale was issued to the winning bidder, 104 Andover Court LLC, for a sale price of $121,600

---

[1] Copies of the Summons, the Complaint, and all other process, pleadings and orders in the Action were attached as Exhibit A to the Trustee's Notice of Removal [Doc. 1].

2

("**Foreclosure Sale**"). [Doc. 1, p. 144]. It appears that the Property was sold subject to a mortgage in favor of Synovus Bank, of approximately $160,626.01.[2]

7. On February 4, 2020, the Debtor filed a voluntary petition under Chapter 7 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq*.

8. On March 10, 2020, the Clerk's office issued a Certificate of Disbursement, reflecting surplus funds from the Foreclosure Sale of $114,235.48 as of January 14, 2020. [Doc. 1, p. 198].

9. Ocean City has collected not less than $19,136.70 in fees and costs, although almost half of this amount was collected from a forfeited deposit from a putative purchaser whose purchase fell through, and is now claiming additional amounts, including attorney's fees. [Bankruptcy Case, Doc. 147, p. 4].

10. The Debtor objected to the sale confirmation, arguing that (1) Ocean City's lien was satisfied from the forfeited deposit that Ocean City collected from the failed initial sale, (2) he attempted to redeem the property on the day of the sale and his redemption payment reached the plaintiff by wire transfer only several minutes after the deadline, and (3) the foreclosure sale price was disproportionate to the value of the property. [Doc. 1, p. 164-68].

11. The state court rejected these contentions, and the Debtor filed an appeal to District Court of Appeal of the State of Florida, Fourth District, which was stayed due to the bankruptcy case.

12. The Trustee removed the Action to this Court [Doc 1], and has filed a motion for the Trustee to be substituted for the Debtor as Defendant [Doc. 6].

---

[2] Synovus Bank, as successor by merger with Florida Community Bank, N.A. (the original Mortgage holder), was the holder of the mortgage at the time of the sale. On March 14, 2020, Synovus Bank assigned the mortgage to RH Fund XX, LLC

13.     The Trustee has also filed a separate Adversary Proceeding Complaint [1:20-ap-01050; Doc. 1], pursuant to the equitable doctrine of marshalling, seeking to compel the United States and the Massachusetts Department of Revenue to marshal by enforcing their respective liens against the Debtor's real property in Massachusetts, so as to maximize the value of the Estate's interest in the Debtor's remaining real properties.

14.     The USA's Motion to Vacate raises issues that will impact the administration of the Estate, particularly with respect to the disposition of the Property.[3]

ARGUMENT

I.   <u>The Foreclosure Sale should be unwound because the Florida state court's entry of default against the United States and Summary Judgment of Foreclosure were void due to Ocean City's failure to comply with 28 U.S.C. 2410(b)</u>.

"It is well established that the United States cannot be sued without its consent." *Scottsdale Ins. Co. v. English Furniture Indus.*, No. IP 97-1380-C-T/G, 1997 U.S. Dist. LEXIS 23082, at *8 (S.D. Ind. Oct. 17, 1997). Under 28 U.S.C. § 2410, Congress provides for the waiver of the government's sovereign immunity in civil actions in which the government has or claims a mortgage or lien on real property (§ 2410(a)), but "this waiver does not apply unless a party strictly complies with the notice provision of the statute." *Aquisto v. United States*, No. 1:08-CV-2184, 2010 U.S. Dist. LEXIS 72742, at *2 (M.D. Pa. July 20, 2010).

The specific procedural requirements for joining the United States as a party, including service of process upon the United States, are set forth in 28 U.S.C. § 2410(b). This Section requires "service of process upon the United States Attorney for the district in which the state court action is brought, <u>and</u> sending copies of the process and complaint by certified or registered

---

[3] The Trustee intends to file a separate Adversary Proceeding Complaint, seeking affirmative relief including the unwinding of the Foreclosure Sale and a determination of the lien priorities concerning the Property, which should be consolidated with this proceeding.

4

mail to the U.S. Attorney General in Washington, D.C." *Scottsdale*, 1997 U.S. Dist. LEXIS 23082, at *8 (emphasis added); 28 U.S.C. § 2410(b).[4] Section 2410(b) further grants the United States 60 days to answer after proper service. 28 U.S.C. § 2410(b).

Here, although Ocean City served the local United States Attorney's office, it did not enact service upon the Attorney General, as required by Section 2410(b). *See* USA's Motion to Vacate (p. 2); *see also* [Doc. 1, p. 27]. Strict compliance is necessary. *Scottsdale*, 1997 U.S. Dist. LEXIS 23082, at *8. Partial compliance is insufficient, even if the United States had actual notice.

In *United States v. Rockland Tr. Co.*, 860 F. Supp. 895, 897 n.3 (D. Mass. 1994), the defendant failed to send copies of the process and complaint by registered or certified mail to the Attorney General and failed to serve the United States Attorney for the District of Massachusetts. The defendant asserted that the United States had "actual knowledge" because the Attorney General and the IRS were served with a copy of the summons and complaint in interpleader by a special process server. *Id*. The Massachusetts District Court rejected the argument that actual knowledge could substitute for strict compliance, stating: "§ 2410 does not recognize mere constructive or even actual knowledge of pending actions but rather, recognizing the potential for disputes regarding service on a diffuse bureaucratic institution, requires the careful observation of certain formalities." *Id*.

In *Pagosa Lakes Prop. Owners Ass'n v. Lee*, No. 17-cv-02802-RBJ, 2018 U.S. Dist. LEXIS 186000 (D. Colo. October 31, 2018), the Colorado District Court recently presided over a

---

[4] "28 U.S.C. § 2410 (b) specifically requires service upon both the United States Attorney and the Attorney General in an action involving liens arising under the internal revenue laws." *Acquisto v. United States*, No. 1:08-CV-2184, 2010 U.S. Dist. LEXIS 73109, at *8-9 (M.D. Pa. June 30, 2010) (emphasis in original), adopted by *Aquisto*, 2010 U.S. Dist. LEXIS 72742 (cited *supra*).

case with facts comparable to those here. In *Pagosa*, a property owners association ("Pagosa") filed a complaint for judicial foreclosure in Colorado state court against an individual owner, where the Rural Housing Service, U.S. Department of Agriculture ("Housing Service") had an interest in the property through a recorded deed of trust. *Id*. at *1. Pagosa also sued the Housing Service; however, it failed to strictly comply with 28 U.S.C. § 2410(b) because it only "delivered a copy of the complaint and summons at the headquarters of the U.S. Department of Justice in Washington, D.C." *Id*. at *1-2. When the Housing Service did not respond, Pagosa obtained an entry of default and was subsequently granted a decree of judicial foreclosure by the state court. *Id*. at *2. This decree of foreclosure granted default judgment *in rem* against the Housing Service; adjudicated Pagosa's lien as the prior and superior lien on the property and extinguished the lien of the Housing Service; and ordered the sale of the real property. *Id*. at *2-3. The county sheriff then sold the property, purportedly free and clear of any interest of the Housing Service. *Id*. at *3. The Housing Service, after removing the state court action to the Colorado District Court pursuant to 28 U.S.C. §§ 1444 and 2410(a), filed a motion to set aside the state court's default judgment and decree of foreclosure. *Id*.

The Colorado District Court agreed with the Housing Service, and ordered that both the state court default judgment and the decree of foreclosure were void because the state court never acquired personal jurisdiction or subject-matter jurisdiction over the Housing Service due to "Pagosa's mistake with service." *Id*. at *3-4, 6. The District Court further held that to the extent that Colorado state law conflicted with 28 U.S.C. § 2410, the latter of which offers greater protection to liens of the United States, the state law was preempted. *Id*. at *4-5.

Similarly here, the Florida state court's entry of default against the United States and Summary Judgment of Foreclosure were void for lack of jurisdiction because Ocean City failed

6

to properly serve the Attorney General pursuant to 28 U.S.C. § 2410(b). *See Pagosa*, 2018 U.S. Dist. LEXIS 186000; *see also Scottsdale*, 1997 U.S. Dist. LEXIS 23082, at *8 ("failure to make service complying with section 2410(b) deprives the court of jurisdiction over an action involving a lien of the United States.") (citing cases). Accordingly, the Foreclosure Sale of the Property as ordered by the void Summary Judgment of Foreclosure (¶ 4) cannot stand.

II.   The Foreclosure Sale must also be unwound as a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

The constructive fraud provision of 11 U.S.C. § 548(a)(2)(A) permits avoidance of transfers by insolvent debtors if the trustee can establish (1) that the debtor had an interest in property; (2) that a transfer of that interest occurred within one year of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) that the debtor received less than a reasonably equivalent value in exchange for such transfer. Section 548 applies to any "transfer," which includes "foreclosure of the debtor's equity of redemption." *Bfp v. Resolution Tr. Corp.*, 511 U.S. 531, 535 (1994).

Here, with respect to the first three factors, there can be no legitimate dispute that the Debtor had an interest in the Property; the Foreclosure Sale occurred within a year of the Debtor's Chapter 7 petition; and that the Debtor was insolvent at the time of the sale.

With respect to the fourth factor, in *Bfp v. Resolution Tr. Corp.*, the U.S. Supreme Court concluded that "reasonably equivalent value" for a foreclosed property is the price in fact received at the foreclosure sale, "so long as all the requirements of the State's foreclosure law have been complied with." 511 U.S. at 545. The Court expressly held that § 548(a)(2) will "continue to be an exclusive means of invalidating some foreclosure sales," and:

7

> Any irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale price of its conclusive force under § 548(a)(2)(A), and the transfer may be avoided if the price received was not reasonably equivalent to the property's actual value at the time of the sale (which we think would be the price that would have been received if the foreclosure sale had proceeded according to law).

*Id*. at 545-46.

Here, 718.116(6)(a), Fla. Stat., provides that a condominium "association may bring an action in its name to foreclose a lien for assessments in the manner a mortgage of real property is foreclosed." The judicial sales procedure, set forth in 45.031, Fla. Stat., requires an "order or final judgment" directing the clerk to sell the property at public sale. 45.031(1)(a). As discussed *supra*, the Florida state court's entry of default against the United States and Summary Judgment of Foreclosure were void for lack of jurisdiction; therefore, the judicial sales procedure was not followed.[5] Ocean City's failure to properly serve the United States pursuant to 28 U.S.C. § 2410, which would have given the United States 60 days to answer and an opportunity to contest the foreclosure and lien priorities, led to a rushed sale for substantially less than the Property's actual value.

The circumstances of the Foreclosure Sale qualify as "any irregularity" warranting judicial invalidation of the sale. *Bfp*, 511 U.S. at 545-46. As such, the Foreclosure Sale is avoidable pursuant to 11 U.S.C. § 548(a)(2)(A).

### III. The Trustee is entitled to conduct a private sale of the Property pursuant to 11 U.S.C. §363(b)(1) to yield maximum value for the Estate and its creditors.

The Bankruptcy Code provides that a trustee or debtor-in-possession "after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the

---

[5] The requirements of 28 U.S.C. § 2410 would preempt Florida state law to the extent that the state law is inconsistent and offers less protection to liens of the United States. *See Pagosa*, 2018 U.S. Dist. LEXIS 186000, at *4-5, *supra*.

estate." 11 U.S.C. § 363(b)(1). Bankruptcy courts have approved the disposition of debtors' assets pursuant to Section 363(b) where the transactions represent the exercise of reasonable business judgment. *See In re Martin*, 91 F.3d 389, 396 (3d Cir. 1996); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983). In the bankruptcy case, this Court already approved a prior motion by the Trustee to conduct a private sale of another property of the Debtor also located in Delray Beach, Florida pursuant to Section 363. [Doc. 122, Order; Doc. 64, Motion by Trustee].

Provided that the Court unwinds the Foreclosure Sale for the reasons stated *supra*, the Trustee has concluded in his business judgment that it is in the best interests of the Estate and its creditors for the Trustee to conduct a private sale of the Property through a competent Florida broker. Although the Trustee has not yet fully investigated the market conditions for sale of the Property, his preliminary communications with knowledgeable brokers lead him to expect that a private sale similar to the sale of the Debtor's other Delray Beach property will generate proceeds that greatly exceed those obtained through the Foreclosure Sale. One knowledgeable local broker consulted by the Trustee estimated that the Property would sell for at least $500,000. *See also* Declaration of Barry Chapin [Doc. 1, p. 189-90] (testifying that the Property is worth $475,000 - $500,000, based on offers received from potential buyers).

If the Court unwinds the Foreclosure Sale, the Trustee intends to conduct further investigation and actively market the Property through a broker, before moving for an order authorizing the sale of the Property. Following such private sale, the Trustee intends to hold the proceeds subject to a determination by the Court on the Trustee's marshalling action before further distribution.

9

        Respectfully submitted,

        HAROLD B. MURPHY
        Chapter 7 Trustee of Barry Chapin,
        By his attorney,

        */s/ Shawn Lu*
        Kathleen R. Cruickshank (BBO #550675)
        Shawn Lu (BBO #679755)
        Murphy & King P.C.
        One Beacon Street
        Boston, MA  02108-3107
        Telephone:  (617) 423-0400
        KCruickshank@murphyking.com
Date: June 29, 2020        SLu@murphyking.com